Opinion filed July 23, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00190-CR

_____

**AMANDA KAY PARKS-HODGES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. CR23-01079**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Amanda Kay Parks-Hodges, of possession of methamphetamine in an amount of four grams or more but less than 200 grams, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West Supp. 2025). The trial court assessed her punishment at confinement for seven years in the Institutional Division of the Texas Department of Criminal Justice. In a single

issue on appeal, Appellant challenges the sufficiency of the evidence supporting her conviction.  We affirm.

*Background Facts*

Officer Jeffrey Baker, a patrol officer and canine handler with the City of Coleman Police Department, responded to a call from Appellant about a disturbance in progress at Appellant's stepsister's residence.  Upon arrival, Officer Baker made contact with Appellant, her stepsister, Lacinda Moore, and Moore's live-in partner, Larry Wayne Durham, Jr.  He spoke with the parties individually and learned that there had been an altercation between Moore and Durham "where he was assaulting her and cutting her hair."  Durham gave Officer Baker consent to enter the house, and he observed the house in a state of disarray with methamphetamine and drug paraphernalia in plain view.  The methamphetamine was found in small, clear and blue Ziploc baggies.

Officer Baker then spoke with Appellant because she was the reporting party, and she informed him that she had been staying on the couch at the residence for three nights and had used methamphetamine two days prior.

Officers obtained a search warrant for the residence to locate narcotics and items used in the possession and sale of narcotics.  The items found in the residence included: a clear baggie containing a white crystal substance, a homemade smoking device with liquid inside, a Febreze bottle with a butane fuel top, a green and blue smoking device, a glass pipe with marihuana residue, a crusher with marihuana inside of it, Zig-Zag rolling papers, and a clear baggie with white crystal residue inside.  The homemade smoking device was found in an end table in the living room next to the couch.  The liquid inside was field tested and produced a positive result for the presence of methamphetamine.  The liquid was weighed and sent to a laboratory for analysis.

2

Two presumptive tests were conducted at the lab, which showed that the sample of the liquid in the homemade smoking device contained methamphetamine. The net weight of the liquid substance prior to analysis was 30.49 grams. The forensic scientist who conducted the tests testified that when multiple items are available for testing, the item that yields the highest penalty is the only item tested. Because the liquid from the homemade smoking device weighed the most, it was the item tested for the presence of a controlled substance rather than smaller baggies that were also available for testing. There were no tests conducted to determine the purity concentrations of the substance, so there was not an exact amount of methamphetamine determined to be present in the liquid.[1]

Moore testified that Appellant had been living with Moore and Durham at the time of their arrest. Moore testified that, on the day of their arrest, the police had been called because she and Durham had a disagreement about cutting her hair and "how [they] were living." She stated that Durham was angry about their drug use. Moore claimed that she, Durham, and Appellant all used methamphetamine together, and their method of consumption was smoking. She stated that they all had smoked methamphetamine together at the house on several occasions in the two days prior to their arrest. However, Moore testified that she had never seen the homemade smoking device before, and that she preferred to smoke her methamphetamine through a glass pipe. Moore stated that she wanted Appellant to

---

[1]It is of no consequence that the liquid was not tested to determine the amount of controlled substance contained in a mixture. *See Jackson v. State*, 483 S.W.3d 78, 82 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). The State is not required to determine the amount of controlled substance and adulterant or dilutant that constitute the mixture. *Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003); *Graham v. State*, 201 S.W.3d 323, 328 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("[A]ny substance that is added to or mixed with a controlled substance, regardless of when, how, or why that substance was added, may be added to the aggregate weight of the controlled substance as an adulterant or dilutant." (quoting *Seals v. State*, 187 S.W.3d 417, 420 (Tex. Crim. App. 2005))). Instead, the State must only prove that the aggregate weight of the controlled substance mixture, including any adulterants and dilutants, equals the alleged minimum weight. *Melton*, 120 S.W.3d at 344.

move in because she heard that Appellant was using methamphetamine intravenously during her pregnancy, and while her original intentions were for them all to get clean together, that did not occur.

Durham testified that Appellant came to stay with them after having trouble at her previous residence. He stated that Appellant had been staying on the living room couch for approximately three weeks at the time of their arrest, but there were occasions where she was in and out of the house.

Durham stated that two days before the incident, the group had been smoking, and because methamphetamine did not taste good, he had the idea to make a water pipe to dilute the chemical taste from the smoke. He said that he had trouble making the device, so Appellant took over and the result was the homemade smoking device that officers found. Durham testified that they both used the device once or twice but decided not to continue because it did not remedy the poor taste. He believed that they had used Sprite in the bottle to attempt to change the flavor of the methamphetamine.

On the day of their arrest, Durham and Moore had an altercation over the way that he had cut her hair, causing police to respond to their home. He testified that, though he told officers that only Moore and Appellant had been using methamphetamine, he had also been participating. He explained that when he was confronted at that time, he claimed the others were the only participants because he was afraid of getting into trouble. Durham stated that when he saw officers arriving at the house, he went back inside to dispose of two baggies containing a small amount of methamphetamine in his pockets that the group had been using the previous night.

Both Moore and Durham confirmed that they had been charged and pled guilty in connection with the substances found at the scene, but both were awaiting sentencing at the time of Appellant's trial.

4

*Analysis*

In a single issue, Appellant contends that the evidence was insufficient to establish that she intentionally or knowingly possessed the methamphetamine. She asserts that the evidence of her knowledge of the smoking device and its contents was lacking. In this regard, she asserts that the house did not belong to her, she had only been living there for a few days, and the smoking device was found behind a door inside of a table.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

A person is guilty of possession of a controlled substance if he or she intentionally or knowingly possessed the controlled substance. *See* HEALTH & SAFETY § 481.115(a). The Health and Safety Code defines possession as "actual care, custody, control, or management." *Id.* at § 481.002(38).

To prove unlawful possession of a controlled substance, the State must show (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015); *Hughitt v. State*, 539 S.W.3d 531, 538 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019). The evidence must establish that the accused's connection with the drugs is more than just her fortuitous proximity to someone else's drugs. *Poindexter*, 153 S.W.3d at 405–06; *Hughitt*, 539 S.W.3d at 538.

Texas courts have formulated the "affirmative links rule," which provides that, "[w]hen the accused is not in exclusive possession of the place where the

6

substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts); *see also Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12). The affirmative links rule is routinely employed to establish possession when the accused is not in exclusive possession of the place where the drugs are found. *Poindexter*, 153 S.W.3d at 406. "This rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.*

The following links have been applied to infer knowledge relating to the contraband: (1) the accused's presence when the search was executed; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the contraband; (4) whether the accused was under the influence of a controlled substance when he was arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Tate*, 500 S.W.3d at 414 (citing *Evans*, 202 S.W.3d at 162 n.12). It is not the number of links that is dispositive; rather, it is the logical force

of all the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

Appellant contends that Durham provided the only "witness evidence" that Appellant used or knew of the smoking device from which the tested liquid came. She asserts that his testimony was not corroborated by any other evidence. Under Article 38.14 of the Code of Criminal Procedure, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2023).[2] "Therefore, if an accomplice to the offense testifies for the State, the accomplice's testimony must be corroborated by non-accomplice evidence that tends to 'connect the accused to the offense.'" *State v. Ambrose*, 487 S.W.3d 587, 593 (Tex. Crim. App. 2016) (quoting *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011)).

A witness can be an accomplice either as a matter of law or as a matter of fact. *Ash v. State*, 533 S.W.3d 878, 884 (Tex. Crim. App. 2017); *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013) (citing *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006)). A witness is an accomplice as a matter of law when "the witness has been charged with the same offense as the defendant or a lesser-included offense, or 'when the evidence clearly shows that the witness could have been so charged.'" *Zamora*, 411 S.W.3d at 510 (quoting *Cocke*, 201 S.W.3d at 747–48). If a witness is an accomplice as a matter of law, the trial court must

---

[2]Although Appellant does not cite Article 38.14 or present a contention under it, as set out below, we must include it in our review of the sufficiency of the evidence.

affirmatively instruct the jury that the witness is an accomplice whose testimony must be corroborated.[3] *Id.*

Durham and Moore were accomplices as a matter of law because they were charged with possessing the same controlled substance. In reviewing the sufficiency of the corroborating evidence, we eliminate the accomplice witness testimony from consideration and focus on the remaining portions of the record to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). Such corroboration may come from small details. *Trevino v. State*, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999).

We review the corroborating evidence in the light most favorable to the verdict. *Taylor v. State*, 328 S.W.3d 574, 578 (Tex. App.—Eastland 2010, pet. ref'd). Once corroborated, testimony of an accomplice may be considered by the jury in the same manner as any other competent evidence. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

The corroborating evidence in this case consists of Officer Baker's testimony and Appellant's statements that she made to him. When Officer Baker was given permission to enter the residence, he observed controlled substances and drug paraphernalia in plain view. This discovery led to the search warrant which

---

[3]For reasons that are not apparent from the record, the trial court's charge is not included in the appellate record. In its absence, we presume that the trial court included the accomplice witness instruction in its charge.

produced more substances and paraphernalia upon further investigation of the residence. Specifically, Officer Baker testified that officers found the following items in the house during their search:

> a clear baggie containing a white crystal substance, a homemade smoking device with liquid inside, a Febreze bottle with a butane fuel top, a green and blue smoking device, a glass pipe with marihuana residue, a crusher with marihuana inside of it, Zig-Zag rolling papers, and a clear baggie with white crystal residue inside.

Officer Baker's discovery was further supported by Appellant's admission to officers that she had consumed methamphetamine in the two days prior and had been living at the residence for three days.

The sufficiency of non-accomplice evidence is judged according to the facts and circumstances of each case. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). We do not independently construe the non-accomplice evidence but instead defer to the factfinder's resolution of it. *Id.* To meet the rule's requirements, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense. *Ambrose*, 487 S.W.3d at 593; *Cathey*, 992 S.W.2d at 462. Rather, the evidence, whether direct, circumstantial, or both, must show that rational jurors could have found that it sufficiently tended to connect the accused to the offense. *Smith*, 332 S.W.3d at 442; *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009).

While a defendant's mere presence at the scene of a crime is insufficient to corroborate accomplice testimony, *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007), "proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration

to support a conviction." *Smith*, 332 S.W.3d at 443 (quoting *Richardson v. State*, 879 S.W.2d 874, 880 (Tex. Crim. App. 1993)). Here, Appellant slept on a couch in her stepsister's house where drugs and drug paraphernalia were in plain view. The smoking device was found near the couch were Appellant slept. Further, Appellant admitted to using methamphetamine in the days prior to its discovery. These are suspicious circumstances that tend to connect Appellant to the crime of possessing the liquid in the smoking device. *See id.* Accordingly, we are permitted to consider Durham's and Moore's testimony in considering the sufficiency of the evidence. *See Herron*, 86 S.W.3d 632.

Durham and Moore testified about Appellant's participation in the consumption of methamphetamine at the residence in the days leading to their arrest. Further, Durham testified that Appellant participated in the creation and use of the homemade smoking device that was found to contain methamphetamine.

Appellant contends that Durham's trial testimony was inconsistent with his prior statements to the police. Appellant additionally asserts that Durham's testimony was suspect because he was seeking help from law enforcement with respect to the charge pending against him for the same offense. However, the jury was the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *See* Crim. Proc. art. 36.13 (West 2007), art. 38.04 (West 1979); *Brooks*, 323 S.W.3d at 899. As such, the jury was entitled to accept or reject any or all testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); *Ibarra v. State*, 479 S.W.3d 481, 488 (Tex. App.—Eastland 2015, pet. ref'd). Thus, the jury could have chosen to believe Durham's testimony about Appellant's construction and use of the homemade smoking device.

Appellant also points to the absence of a glass pipe that would have been required to use the homemade smoking device. She contends that the evidence is insufficient without the discovery of this glass pipe. When conducting an

evidentiary review, however, we only review the evidence that was presented at trial, and do not consider or speculate as to what evidence the State could have or arguably should have presented. *See Henderson v. State*, No. 11-22-00031-CR, 2024 WL 269627, at *5 (Tex. App.—Eastland Jan. 25, 2024, no pet.) (mem. op., not designated for publication); *Meza v. State*, No. 11-20-00217-CR, 2022 WL 2976164, at *4 (Tex. App.—Eastland July 28, 2022, no pet.) (mem. op., not designated for publication). Here, the evidence in the record before us is sufficient to support Appellant's conviction for possession of methamphetamine.

Appellant also admitted to sleeping on the couch directly next to where the homemade smoking device containing methamphetamine was located. Her statement, coupled with Durham's testimony about her construction and use of the homemade smoking device and the other evidence affirmatively linking her to the smoking device, were sufficient for a reasonable jury to conclude that Appellant knowingly possessed the methamphetamine in the homemade smoking device found in the residence. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

July 23, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.